DAVIS WRIGHT TREMAINE LLP
MARTIN L. FINEMAN (CA State Bar No. 104413)
Member of the Central District of California Bar
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
E-mail: martinfineman@dwt.com

DAVIS WRIGHT TREMAINE LLP
STEPHEN M. RUMMAGE (*Pro Hac Vice*)
CHARLES S. WRIGHT (*Pro Hac Vice*)
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
Telephone: (206) 622-3150
Facsimile: (206) 757-7500
E-mail: charleswright@dwt.com

Attorneys for Defendant
Cellco Partnership d/b/a Verizon Wireless

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

RAYMOND BOWER,

                Plaintiff,

vs.

CELLCO PARTNERSHIP d/b/a
VERIZON WIRELESS,

                Defendant.

Case No. **CV 10-4572 GW (VBK)**

NOTICE OF DEFENDANT'S
MOTION AND MOTION TO
COMPEL ARBITRATION;
MEMORANDUM IN SUPPORT
THEREOF

Date: July 21, 2011
Time: 8:30 a.m.
Courtroom: 10
Before the Honorable George H. Wu

*(vertical left margin text)* DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1   TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

2   PLEASE TAKE NOTICE that on July 21, 2011, at 8:30 a.m. or as soon

3   thereafter as counsel may be heard, in the Courtroom of the Honorable George H.

4   Wu, United States District Court for the Central District of California, located at 312

5   N. Spring Street, Los Angeles, California 90012, Defendant Cellco Partnership d/b/a

6   Verizon Wireless ("Verizon Wireless") will move, and hereby does move, for an

7   Order compelling Plaintiff Raymond Bower to arbitrate his claims pursuant to his

8   customer agreement with Verizon Wireless and staying this action pending the

9   outcome of that arbitration.

10   Verizon Wireless bases its Motion on this Notice of Motion and Motion,

11   Defendant's Memorandum in Support Thereof, the Declaration of Ana Diaz

12   (originally filed at Dkt. No. 14, but resubmitted with this motion) and exhibits

13   thereto, and the Court records and files in this action.

14   Verizon Wireless's Motion seeks relief in the form of an Order compelling

15   Plaintiff Raymond Bower to arbitrate his claims against Verizon Wireless pursuant to

16   his customer agreement with Verizon Wireless and staying this action pending the

17   outcome of that arbitration.

18   Verizon Wireless makes this motion following a conference of counsel

19   pursuant to Local Rule 7-3, which took place on May 23, 2011. *See* Joint Status

20   Report (Dkt. No. 32).

21   Dated: June 23, 2011.                    DAVIS WRIGHT TREMAINE LLP

22

23                                           By:/s/ *Charles S. Wright*
                                                 Martin Fineman
24                                               Stephen M. Rummage
                                                 Charles S. Wright
25                                               Attorneys for Defendant
26                                               CELLCO PARTNERSHIP d/b/a
                                                 VERIZON WIRELESS
27

28

1

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................. 1

II. BACKGROUND ................................................................................. 2

    A.    Plaintiff's Allegations .................................................................. 2

    B.    The Terms of Verizon Wireless's Customer Agreements ................... 2

III. LEGAL ARGUMENT ........................................................................ 5

    A.    Plaintiff's Claims Fall within the Scope of the Parties' Arbitration Agreement. ................................................................................. 5

    B.    *Concepcion* Preempts *Discover Bank*. ......................................... 6

    C.    *Concepcion*'s Broad Principles Reach Beyond Preemption. ............. 7

    D.    Plaintiff's New Arguments Do Not Preclude Arbitration. ................... 9

        1.    Plaintiff Cannot Rely on a Small Claims Provision He Never Invoked. ................................................................ 10

        2.    The Ninth Circuit Has Held FCA Claims Are Subject to Arbitration. ........................................................................ 11

        3.    Plaintiff Cannot Rely on *In re American Express*. ................. 11

        4.    Plaintiff Has Not Demonstrated Grounds for a Stay Pending Unlikely Congressional Action. .............................. 16

    E.    The Court Should Stay this Action Pending the Outcome of Arbitration. ............................................................................... 17

IV. CONCLUSION ............................................................................... 17

DEFENDANT'S MOTION TO COMPEL ARBITRATION
DWT 17316057v3 0052051-013713

DAVIS WRIGHT TREMAINE LLP

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Arellano v. T-Mobile USA, Inc.*
  2011 WL 1842712 (N.D. Cal. May 16, 2011)................................14

*AT&T Mobility LLC v. Concepcion*
  130 S. Ct. 3322 (2010) ....................................................................1

*AT&T Mobility LLC v. Concepcion*
  131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) ..........................*passim*

*Bernal v. Burnett*
  2011 WL 2182903 (D. Colo. June 6, 2011)................................14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
  207 F.3d 1126 (9th Cir. 2000)........................................................5

*D'Antuono v. Service Rd. Corp.*
  2011 U.S. Dist. LEXIS 57367 (D. Conn. May 25, 2011)...............13

*Dean Witter Reynolds, Inc. v. Byrd*
  470 U.S. 213 (1985)........................................................................5

*Gilmer v. Interstate/Johnson Lane Corp.*
  500 U.S. 20 (1991) ...........................................................12, 13, 14

*Greenwood v. CompuCredit Corp.*
  615 F.3d 1204 (9th Cir. 2010), *cert. granted* 2011 WL 220683 (May 2,
  2011) ..............................................................................................11

*In re American Express Merchants' Litigation*
  634 F.3d 187 (2d Cir. 2011)...................................................*passim*

*Johnson v. West Suburban Bank*
  225 F.3d 366 (3d Cir. 2000)..........................................................15

*Laster v. AT&T Mobility LLC*
  584 F.3d 849 (9th Cir. 2009) ..........................................................6

*Lozano v. AT&T Wireless Servs., Inc.*
  504 F.3d 718 (9th Cir. 2007)..................................................11, 14

DAVIS WRIGHT TREMAINE LLP

*Mendoza v. Zirkle Fruit Co.*
   301 F.3d 1163 (9th Cir. 2002) .................................................................16

*Mitsubishi Motors v. Soler Chrysler-Plymouth*
   473 U.S. 614 (1985) ................................................................................15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
   460 U.S. 1 (1983) ......................................................................................5

*Nagrampa v. MailCoups, Inc.*
   469 F.3d 1257 (9th Cir. 2006) ...................................................................6

*North County Commc'ns v. Calif. Catalogue & Technology*
   594 F.3d 1149 (9th Cir. 2010) .................................................................15

*Rebel Oil Co. v. Atl. Richfield Co.*
   51 F.3d 1421 (9th Cir. 1995) ...................................................................15

*Shroyer v. New Cingular Wireless Servs., Inc.*
   498 F.3d 976 (9th Cir. 2007) .....................................................................6

*Stoican v. Cellco Partnership*
   No. 10-cv-1017 RAJ (W.D. Wash., filed May 20, 2011).............................9

*Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*
   130 S. Ct. 1758 (2010)...............................................................................7

STATE CASES

*Discover Bank v. Superior Court*
   36 Cal. 4th 148, 113 P. 3d 1100 (2005) ..........................................*passim*

FEDERAL STATUTES

9 U.S.C. § 2 .....................................................................................................6

9 U.S.C. § 3 ...................................................................................................17

15 U.S.C. § 15 ...............................................................................................15

47 U.S.C. § 207 .............................................................................................14

DAVIS WRIGHT TREMAINE LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STATE STATUTES**

Cal. Civ. Code § 1668.................................................................................................6

Cal. Code Civ. Proc. § 116.221.................................................................................10

Cal. Code Civ. Proc. §116.530..................................................................................10

Cal. Code Civ. Proc. § 116.540.................................................................................10

**OTHER AUTHORITIES**

Arbitration Fairness Act of 2009, H.R. 1020, 111th...............................................16

Arbitration Fairness Act of 2011 .............................................................................16

DAVIS WRIGHT TREMAINE LLP

DEFENDANT'S MOTION TO COMPEL ARBITRATION
DWT 17316057v3 0052051-013713

# MEMORANDUM IN SUPPORT OF MOTION

## I.    INTRODUCTION

Plaintiff Raymond Bower subscribes to wireless telephone service offered by Defendant Cellco Partnership, d/b/a Verizon Wireless ("Verizon Wireless"). The customer agreements to which Mr. Bower agreed when he renewed his Verizon Wireless subscription in 2008 and again in 2010 include an arbitration clause that covers the claims Mr. Bower has asserted in this action. Verizon Wireless now respectfully requests that the Court compel Mr. Bower to arbitrate his claims.

The arbitration clause between Bower and Verizon Wireless also includes a class action waiver. In 2005, the California Supreme Court held that arbitration agreements containing class action waivers were unconscionable as a matter of California law and, therefore, unenforceable. Thus, when Verizon Wireless initially filed a motion to compel arbitration, it acknowledged that the class action waiver might make its arbitration clause unenforceable under then-existing California law. *See* Motion (Dkt. No. 13). By that time, however, the United States Supreme Court had granted certiorari in a case considering whether the Federal Arbitration Act ("FAA") preempts state laws prohibiting class action waivers in arbitration clauses. *AT&T Mobility LLC v. Concepcion*, 130 S. Ct. 3322 (2010) ("*Concepcion*"). Verizon Wireless therefore asked the Court to stay consideration of its motion to compel pending the Supreme Court's decision in *Concepcion*. Motion (Dkt. No. 13). This Court granted the motion to stay and denied Verizon Wireless's motion to compel, without prejudice. Minute Order (Dkt. No. 26).

On April 27, 2011, the Supreme Court issued its decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011). The Supreme Court's decision makes clear the FAA preempts any state attempt to require ***any*** procedure inconsistent with the parties' arbitration clause as written, including conditioning enforcement of an arbitration clause on the availability of class or representative proceedings.

Verizon Wireless now renews its motion to compel arbitration. *Concepcion* has removed the basis upon which Plaintiff opposed Verizon Wireless's initial motion: the FAA preempts California law making class action waivers in arbitration clauses substantively unconscionable. Verizon Wireless expects Plaintiff to concede this point, as he must. Undaunted, Plaintiff has indicated he will advance four new theories for circumventing *Concepcion*. None of those theories, however, changes the fundamental premise of *Concepcion*: "Arbitration is a matter of contract, and the FAA requires courts to honor the parties' expectations." *Concepcion*, 131 S. Ct. at 1752. Verizon Wireless therefore requests the Court grant its motion to compel arbitration and stay this action pending the outcome of arbitration.

## II.    BACKGROUND

### A.    Plaintiff's Allegations

Plaintiff subscribes to Verizon Wireless's wireless voice and data communications services. Compl. (Dkt. No. 1) ¶ 9. He claims Verizon Wireless billed him for a data service he ordered but later cancelled; specifically, Plaintiff claims he requested to terminate "Verizon Navigator," a GPS-based service for providing directions and recommendations for nearby attractions. *Id.* ¶¶ 10-14. He also claims his monthly bill from Verizon Wireless did not adequately disclose the charges for that service. *Id.* ¶ 15. Plaintiff alleges he paid $9.99 for this service for "more than a year." *Id.* ¶¶ 11. Plaintiff thus claims to have been injured by paying approximately $120, i.e., twelve months at $9.99, for a service he allegedly did not want. Plaintiff asserts claims under the Federal Communications Act, the California Consumer Legal Remedies Act, the California Unfair Competition Law, and the California Public Utilities Code, as well as for breach of contract. *Id.* at 10-16. He also seeks to have this matter certified as a class action. *Id.* at 5-9.

### B.    The Terms of Verizon Wireless's Customer Agreements

As Plaintiff concedes in his complaint, he and Verizon Wireless "entered into a written contract under which [Verizon Wireless] agreed to provide [Plaintiff] with

DAVIS WRIGHT TREMAINE LLP

wireless telephone service." *Id.* ¶ 40; *see also id.* ¶ 41 ("Bower … [is a party] to written contracts, namely wireless telephone service agreements, with [Verizon Wireless]."). Those agreements provide that the parties will settle any disputes by arbitration. The Service Agreement Plaintiff signed in 2010 when he renewed his Verizon account states:

> I AGREE TO THE CURRENT VERIZON WIRELESS
> CUSTOMER AGREEMENT (CA) … AND OTHER
> TERMS AND CONDITIONS FOR SERVICES AND
> SELECTED FEATURES I HAVE AGREED TO
> PURCHASE AS REFLECTED ON THE RECEIPT AND
> WHICH HAVE BEEN PRESENTED TO ME BY THE
> SALES REP. AND WHICH I HAD THE OPPORTUNITY
> TO REVIEW. I UNDERSTAND THAT I AM
> AGREEING TO … SETTLEMENT OF DISPUTES BY
> ARBITRATION AND OTHER MEANS INSTEAD OF
> JURY TRIALS AND OTHER IMPORTANT TERMS IN
> THE CA.

Declaration of Ana Diaz ("Diaz Decl."), Ex. B. The Service Agreement incorporates by reference a Customer Agreement, which also provides for arbitration of disputes:

> **You and Verizon Wireless both agree to resolve**
> **disputes only by arbitration or in small claims court.**
> **There's no judge or jury in arbitration, and the**
> **procedures may be different, but an arbitrator can**
> **award the same damages and relief, and must honor the**
> **same terms in this agreement, as a court would. If the**
> **law allows for an award of attorneys' fees, an arbitrator**
> **can award them too. We also both agree that:**

DAVIS WRIGHT TREMAINE LLP

> (1) The Federal Arbitration Act applies to this agreement. Except for small claims court cases that qualify, any dispute that results from this agreement or from the Services you receive from us (or from any advertising for any products or services) will be resolved by one or more neutral arbitrators before the American Arbitration Association ("AAA") or Better Business Bureau ("BBB"). You can also bring any issues you may have to the attention of federal, state, or local government agencies, and if the law allows, they can seek relief against us for you.

Diaz Decl., Ex. C at 35. The Customer Agreement expressly precludes class action arbitration:

> **(3) This agreement doesn't allow class arbitrations even if the AAA or BBB procedures or rules would. The arbitrator may award money or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim.**

*Id.* Finally, the Customer Agreement provides that the class action waiver is not severable from the rest of the arbitration clause, so that if a court holds the class action waiver unenforceable, the arbitration clause will not apply:

> **(8) If for some reason, the prohibition on class arbitrations set forth in subsection (3) cannot be enforced, then the agreement to arbitrate will not apply.**

DAVIS WRIGHT TREMAINE LLP

DEFENDANT'S MOTION TO COMPEL ARBITRATION
DWT 17316057v3 0052051-013713

*Id.* In other words, Plaintiff agreed to arbitrate disputes with Verizon Wireless on an individual, and not a class-action, basis.[1]

## III.   LEGAL ARGUMENT

### A.   Plaintiff's Claims Fall within the Scope of the Parties' Arbitration Agreement.

Courts must compel arbitration where (1) the parties entered into a valid agreement to arbitrate, and (2) the dispute falls within the scope of the arbitration agreement. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Courts must "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "Arbitration is a matter of contract, and the FAA requires courts to honor the parties' expectations." *Concepcion*, 131 S. Ct. at 1752.

The dispute here falls within the scope of the parties' arbitration agreement. The arbitration agreement broadly encompasses "any dispute that results from this agreement or from the Services you receive from us." Diaz Decl., Ex. C at 35. Plaintiff disputes charges for services he received from Verizon Wireless. Moreover, he claims Verizon Wireless breached its written contracts when it billed him for the disputed services. Compl. ¶¶ 40-43. A dispute expressly based on the parties' agreements and resulting from the services allegedly provided to Plaintiff falls squarely within the scope of the parties' agreement to arbitrate.

---

[1] The Customer Agreement to which Plaintiff previously agreed also required arbitration, prohibited class-wide arbitration and provided that the class action waiver was not severable from the arbitration clause as a whole. Diaz Decl., Ex. A at 14. In any event, the more recent Customer Agreement applies to the present dispute because the Service Agreement Bower signed in 2010 states, "I agree to the current Verizon Wireless Customer Agreement." Diaz Decl., Ex. B.

DAVIS WRIGHT TREMAINE LLP

5

The FAA gives Verizon Wireless a right to an order compelling individual arbitration in accordance with the express terms of the Customer Agreement.

## B.   *Concepcion* Preempts *Discover Bank*.

Plaintiff opposed Verizon Wireless's initial motion to compel arbitration based entirely on California's public policy concerns.  Section 2 of the FAA provides that an arbitration agreement in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.   Under section 2, "generally applicable contract defense[s]," such as unconscionability, "may render an arbitration provision unenforceable." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (citation omitted).

In *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 113 P. 3d 1100 (2005), the California Supreme Court held class waivers in arbitration agreements "found in a consumer contract of adhesion" violated California law because "the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.'" *Discover Bank*, 113 P.3d at 1110 (quoting Cal. Civ. Code § 1668).  The Ninth Circuit repeatedly held the FAA did not preempt *Discover Bank* and related state rules. *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976 (9th Cir. 2007); *see also Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009).  Plaintiff relied on *Discover Bank* and *Shroyer* to oppose Verizon Wireless's initial motion. Pl. Opp. (Dkt. No. 23).

*Concepcion* overruled *Laster* and *Shroyer* and held the FAA preempts *Discover Bank*. 131 S. Ct. at 1745, 1753 ("California's *Discover Bank* rule is preempted by the FAA.").  *Discover Bank* therefore no longer stands as an impediment to arbitration of Plaintiff's claims.  Under *Concepcion*, Verizon Wireless's bilateral arbitration clause is "valid, irrevocable, and enforceable" as a matter of federal law. 9 U.S.C. § 2.  The Court must enforce that clause "in accordance with the terms of the agreement." *Id.* § 4.

**DAVIS WRIGHT TREMAINE LLP**

## C.    *Concepcion*'s Broad Principles Reach Beyond Preemption.

Although the precise holding in *Concepcion* considers preemption of state laws inconsistent with the FAA, the principles upon which that holding rests transcend the question of preemption. *Concepcion* reinforces the FAA's mandate for enforcing arbitration agreements—and class-action waivers in those agreements—that Plaintiff's new-found arguments cannot overcome.

The Supreme Court started from the premise that "[t]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Concepcion*, 131 S. Ct. at 1748 (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). Although the FAA "preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." 131 S. Ct. at 1748. The *Discover Bank* rule created such an obstacle:

> The overarching purpose of the FAA . . . is to ensure the
> enforcement of arbitration agreements according to their
> terms so as to facilitate streamlined proceedings. Requiring
> the availability of classwide arbitration interferes with
> fundamental attributes of arbitration and thus creates a
> scheme inconsistent with the FAA.

*Id.* Conditioning the enforcement of an arbitration agreement on the availability of class procedures would rewrite the agreement: "[C]lass arbitration, to the extent it is manufactured by [state law] rather than consensual, is inconsistent with the FAA." *Id.* at 1751.

Similarly, requiring class arbitration would hinder the speedy and efficient resolution of disputes through the streamlined dispute-resolution proceedings envisioned by the FAA. *See id.* at 1750-52. Reiterating the point it recently made in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010), the Court held

7

that requiring a shift from bilateral to class arbitration would effect a "fundamental" change in the nature of arbitration. 131 S. Ct. at 1750 (quoting *Stolt-Nielson*, 130 S. Ct. at 1776). The Court made clear that rules causing such a fundamental change in an otherwise valid arbitration agreement run counter to the FAA.

The Court noted an additional problem with the *Discover Bank* rule in that it invites case-by-case judicial evaluation of arbitration agreements instead of promoting the uniform "national policy favoring arbitration" the FAA demands. *Id.* at 1749 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). The guideposts to enforceability under *Discover Bank* were "that damages be predictably small, and that the consumer allege a scheme to cheat consumers." *Id.* at 1750 (citing *Discover Bank*, 36 Cal. 4th at 162-63). But the Court found these standards to be "toothless and malleable," given that some courts called "predictably small" damages that other courts would regard as quite high. *Id.* Such indefinite standards provide an inadequate bulwark against the "judicial hostility" to arbitration that the FAA was intended to reverse. *See id.* at 1745 ("The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements."); *see also id.* at 1747 (noting "the judicial hostility towards arbitration that prompted the FAA had manifested itself in 'a great variety' of 'devices and formulas' declaring arbitration against public policy").

Finally, the Court made clear that the otherwise salutary purposes of particular rules or outcomes do not justify rewriting arbitration agreements. Neither a state's reasons for refusing to enforce bilateral arbitration agreements (whether on unconscionability or public policy grounds or otherwise) nor the nature of the arbitration agreement matters: "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *Id.* at 1752 (citation omitted). As a consequence, a state may not require class arbitration to facilitate the prosecution of "small-dollar claims that might otherwise slip through the legal system." *Id.* at 1753 (citation omitted). Indeed, states cannot require **any** procedure inconsistent with the

parties' arbitration clause as written, "even if [the procedure] is desirable for unrelated reasons." *Id. Concepcion* thus leaves **no** room for States to require the availability of particular procedures as a condition of enforcement of an arbitration agreement. Like the *Discover Bank* rule, any state-law rule that would require the availability of classwide procedures as a condition to enforcement of the parties' arbitration agreement "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). The FAA preempts every such rule.

Although *Concepcion* primarily concerns preemption of state laws inconsistent with the FAA, it highlights four important principles that transcend the question of preemption. *First*, the FAA requires courts to enforce arbitration agreements as written. *Second*, conditioning enforcement of an arbitration agreement on the availability of class procedures effects a "fundamental" change in arbitration and therefore violates the FAA. *Third*, the FAA does not permit malleable and indefinite standards for enforcing arbitration agreements, which open the door to judicial hostility to arbitration. *Fourth*, a court must measure consistency with the purposes of the FAA without regard to the desirability of a particular outcome.

## D.   Plaintiff's New Arguments Do Not Preclude Arbitration.

Despite *Concepcion*'s broad reach, Verizon Wireless expects Plaintiff will make four new arguments in opposition to this Motion.[2] None of those arguments blunts *Concepcion*'s core holding: "Arbitration is a matter of contract, and the FAA requires courts to honor the parties' expectations." *Concepcion*, 131 S. Ct. at 1752.

---

[2] Plaintiff's counsel recently made those arguments in opposition to a motion to compel arbitration in a companion case pending in the Western District of Washington in Seattle. Plaintiff's Supplemental Brief (Dkt. No. 19), *Stoican v. Cellco Partnership*, No. 10-cv-1017 RAJ (W.D. Wash., filed May 20, 2011).

DAVIS WRIGHT TREMAINE LLP

DEFENDANT'S MOTION TO COMPEL ARBITRATION
DWT 17316057v3 0052051-013713

### 1.   Plaintiff Cannot Rely on a Small Claims Provision He Never Invoked.

Plaintiff likely will argue the Verizon Wireless arbitration agreement does not apply to his claims because of their small value, pointing out that the arbitration agreement has an exception for "small claims court cases that qualify."  Diaz Decl., Ex. C at 35.  Plaintiff then will argue that because his claim seeks only about $120, it does not exceed the $7,500 jurisdictional limit of the California small claims courts, Cal. Code Civ. Proc. § 116.221, and therefore "qualifies" for the small claims exception to the arbitration clause.

Plaintiff's argument suffers two fundamental flaws.

*First*, the arbitration agreement simply gives Plaintiff the *option* of filing in small claims court; it does not exempt all small dollar claims from arbitration.  Diaz Decl., Ex. C at 35 ("For claims $10,000 or less, the party bringing the claim *can choose either* … binding arbitration, or, alternatively, can bring an individual action in small claims court.") (emphasis added).  Thus, the contractual exception by its terms applies only to "small claims court *cases*," i.e., *actual* cases, not controversies that could have been (but were not) filed in small claims court.  Plaintiff *could* have sued in small claims court and avoided arbitration—but he chose not to.  As a result, the exception does not apply.

*Second*, if he had opted to file in small claims court, Plaintiff would have been subject to the governing rules of procedure, which foreclose class actions.  *See* Cal. Code Civ. Proc. § 116.540(a) (prohibiting representative litigation except in limited situations not relevant here).[3]  Likewise, the Verizon Wireless arbitration agreement permits only "an individual action in small claims court."  Diaz Decl., Ex. C at 35.  Plaintiff's foregone option to pursue a small claim does not preserve his ability to remain in federal court seeking to litigate as a representative on behalf of a class.

---

[3] Nor would he be entitled to an attorney in small claims court.  Cal. Code Civ. Proc. §116.530(a).

DEFENDANT'S MOTION TO COMPEL ARBITRATION
DWT 17316057v3 0052051-013713

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

### 2. The Ninth Circuit Has Held FCA Claims Are Subject to Arbitration.

Verizon Wireless also expects Plaintiff to argue the arbitration clause is "unenforceable" because it would "abrogate his 'right to sue' under the" Federal Communications Act ("FCA"). *See* Compl. ¶¶ 29-33. But the Ninth Circuit—in a case handled by Plaintiff's counsel—rejected exactly this argument. In *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 725-27 (9th Cir. 2007), the Court "h[e]ld that FCA claims may be subject to agreements to arbitrate." *Id.* at 727.

Faced with *Lozano*, Plaintiff will likely rely on the Ninth Circuit's decision in *Greenwood v. CompuCredit Corp.*, 615 F.3d 1204 (9th Cir. 2010), *cert. granted* 2011 WL 220683 (May 2, 2011). But *Greenwood* involved claims under the Credit Repair Organization Act ("CROA"), not the FCA. Moreover, *Greenwood* expressly rested its holding "on the ground that the CROA evinces an intention to preclude a waiver of judicial remedies," *id.* at 1214, embodied in "a non-waiver provision, phrased in unusually comprehensive and precise language." *Id.* at 1208. The FCA does not contain any such non-waiver provision. Given *Lozano*'s holding, this Court should limit *Greenwood* to the CROA and not extend it to the FCA.

### 3. Plaintiff Cannot Rely on *In re American Express*.

Verizon Wireless expects Plaintiff to devote most of his briefing to an argument that he cannot vindicate federal statutory rights under the FCA through individual arbitration, and so the Court should ignore the arbitration clause to which he agreed. Plaintiff will claim that the reason he purportedly cannot vindicate his rights under the FCA is because he intends to submit expert testimony in support of his claims and it would be economically irrational to pursue his small-dollar claims while incurring the expense of an expert witness. In support, Plaintiff will rely on *In re American Express Merchants' Litigation*, 634 F.3d 187 (2d Cir. 2011), a decision at odds with *Concepcion*, and which turns on antitrust policies not implicated here. In any event, even if *American Express* remains valid after *Concepcion*, Plaintiff

11

cannot meet his burden of showing an inability to vindicate his individual rights in arbitration.

### a.   *American Express* **Is Inconsistent with** *Concepcion.*

Plaintiff's argument that the Court should not force him to arbitrate his FCA claims on an individual basis rests on the subtext that courts should disfavor individual arbitration of federal statutory claims.  In fact, "[i]t is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Plaintiff's contention to the contrary—that the alleged costs of expert testimony create an exception to that settled law—runs headlong into each of the key principles affirmed in *Concepcion*.

*First*, *Concepcion* specifically rejected the premise of Plaintiff's argument— i.e., that the Court should not compel individual arbitration of Plaintiff's FCA claim because the costs of pursuing litigation exceed the modest value of his individual claim.  In *Concepcion*, the plaintiff likewise argued that enforcing AT&T's arbitration clause would prevent the prosecution of small-dollar claims.  The Court disagreed, holding the FAA precludes the imposition of class arbitration "even if [the procedure] is desirable for unrelated reasons." *Concepcion*, 131 S. Ct. at 1753. Moreover, the Court found that "the claim here was most unlikely to go unresolved," given that claimants would receive a minimum of $7,500 and twice their attorney's fees if they obtained an arbitration award greater than AT&T's last settlement offer. *Id.*  Similarly, Verizon Wireless's arbitration clause entitles a plaintiff to recover a minimum of $5,000, plus attorneys' fees and expenses, if the arbitrator awards more than Verizon Wireless's last settlement offer (or if Verizon Wireless does not make an offer).  Diaz Decl., Ex. C at 35.  The Supreme Court found these types of clauses create sufficient incentives to pursue even small-dollar individual claims. *Concepcion* thus forecloses Plaintiff's argument that the costs of individual arbitration would prevent him from pursuing his claims.

DAVIS WRIGHT TREMAINE LLP

*Second*, Plaintiff's claim that the Court should not enforce the arbitration agreement because it would be "prohibitive" for him to pursue his claim on an individual basis represents the kind of "toothless and malleable" standard the Supreme Court rejected in *Concepcion*. 131 S. Ct. at 1750. Case-by-case analysis of the sort Plaintiff advocates too easily permits courts to refuse to enforce individual arbitration agreements based on the traditional "judicial hostility" toward arbitration. *See Gilmer*, 500 U.S. at 24. In this sense, the *American Express* rule is no different from the *Discover Bank* rule the Supreme Court rejected in *Concepcion*:  both interfere with bilateral arbitration agreements by "allow[ing] any party to a consumer contract to demand [class arbitration] *ex post*." *Concepcion*, 131 S. Ct. at 1750.

*Third*, Plaintiff's argument violates the "principal purpose" of the FAA, as the Supreme Court reiterated in *Concepcion*.  Plaintiff agreed to arbitrate whatever claims he might have against Verizon Wireless, and he agreed to do so on an individual, not a classwide, basis.  Conditioning enforcement of that agreement on the availability of classwide arbitration of small-dollar, federal statutory claims would cause a "fundamental" change in both the arbitration agreement and the nature of arbitration.  Thus, *Concepcion*'s condemnation of the *Discover Bank* rule applies equally to the *American Express* rule as applied to Plaintiff's case: "[C]lass arbitration, to the extent it is manufactured by [*American Express*] rather than consensual, is inconsistent with the FAA." *Id.* at 1751. "The 'principal purpose' of the FAA is to 'ensure that private arbitration agreements are enforced according to their terms.'" *Concepcion*, 131 S. Ct. at 1748 (quoting *Volt*, 489 U.S. at 478). Plaintiff's argument based on *American Express* asks the Court to ignore that purpose.

Other courts have recognized that *Concepcion* sweeps more broadly than mere preemption of state law.  At least one district court in the Second Circuit already has expressed "some doubt about *American Express* in light of" *Concepcion*. *D'Antuono v. Service Rd. Corp.*, 2011 U.S. Dist. LEXIS 57367, at *88 (D. Conn. May 25, 2011).

DAVIS WRIGHT TREMAINE LLP

The Second Circuit itself stayed the mandate in *American Express* and directed the parties to file briefs addressing the application of *Concepcion* to the case. *See* Wright Decl. Ex. A (*In re American Express* Docket). And other courts have rejected arguments similar to those Plaintiff advances as inconsistent with *Concepcion*. *See, e.g., Bernal v. Burnett*, 2011 WL 2182903, at *7 (D. Colo. June 6, 2011); *Arellano v. T-Mobile USA, Inc.*, 2011 WL 1842712, at *2 (N.D. Cal. May 16, 2011). Like these other courts, the Court must follow *Concepcion*, not *American Express*.

## b.   The FCA Does Not Override The FAA.

Even if *American Express* survived *Concepcion*, it deals with the Sherman Act, *not* the FCA, and Plaintiff cannot show that the FCA overrides the FAA. Courts must enforce an agreement to arbitrate federal statutory claims unless Congress "has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer*, 500 U.S. at 26 (citation omitted). "The burden is on the party opposing arbitration … to show that Congress intended to preclude arbitration of the statutory claims involved." *Lozano*, 504 F.3d at 725-26 (citations omitted).

Plaintiff cannot meet this burden. He cannot point to anything in the text or legislative history of the FCA indicating that Congress intended to limit arbitration of FCA claims. Indeed, the Ninth Circuit found no such intent in *Lozano*. *Id.* at 726 (rejecting argument that "Congress intended to limit the adjudication of [important public policy] claims to the FCC and the federal district courts, and to the exclusion of an arbitral forum"). Nor does Plaintiff's appeal to the alleged expense of a potential expert witness provide evidence of that intent. As Congress made no provision in the FCA for recovery of expert witness fees (or even attorney fees, *see* 47 U.S.C. § 207 (permitting recovery of only damages)), Plaintiff cannot credibly argue that the cost of an expert defeats Congress' intent in enacting the FCA's substantive standards. Nor does Plaintiff's desire to "rationalize" the costs of his expert through a class action matter under the FCA: Plaintiff has no substantive right to a class action under section 201 or any other section of the FCA.

14

DAVIS WRIGHT TREMAINE LLP

Finally, vindication of the FCA's substantive standards does not depend on whether Plaintiff pursues his claim in an individual arbitration (or in court, for that matter). The FCC has primary jurisdiction to interpret and enforce the FCA, *North County Commc'ns v. Calif. Catalogue & Technology*, 594 F.3d 1149, 1155 (9th Cir. 2010), and if Verizon Wireless or any other wireless carrier violated section 201, the FCC may pursue those violations. *See Johnson v. West Suburban Bank*, 225 F.3d 366, 375 (3d Cir. 2000) ("Our conclusion that there is no irreconcilable conflict between the TILA's social policy goals and arbitration of claims that could have been heard as part of a class action is bolstered by the statute's administrative enforcement provisions."). In contrast, the Sherman Act depends on private litigation as a primary enforcement mechanism, and gives teeth (and incentives) to private litigation through mandatory treble damages. 15 U.S.C. § 15; *see also Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 635 (1985) ("The treble-damages provision wielded by the private litigant is a chief tool in the antitrust enforcement scheme, posing a crucial deterrent to potential violators."). Indeed, preserving such private enforcement was key to the Second Circuit's holding in *American Express*:

> Eradicating the private enforcement component from our antitrust law scheme cannot be what Congress intended when it included strong private enforcement mechanisms and incentives in the antitrust statutes.

634 F.3d at 199. Plaintiff cannot point to any such intent under the FCA.

### c. Plaintiff Cannot Meet His Burden under *American Express*.

The Second Circuit in *American Express* refused to order arbitration of Sherman Act claims because plaintiffs showed that pursuing an ***individual*** antitrust claim in arbitration would be prohibitively expensive. 634 F.3d at 197-99. Even an individual antitrust claim requires proof of relevant markets and harm to competition within those markets. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th

Cir. 1995).  Those questions are "exceedingly complex and best addressed by economic experts."  *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1171 (9th Cir. 2002).

By contrast, Plaintiff ***could*** vindicate his individual rights without an expert witness, if the arbitrator credits his testimony.  Plaintiff alleges he voluntarily paid $9.99 for Verizon Navigator for "more than a year."  Compl. (Dkt. No. 1) ¶ 11.  The billing statement attached to Plaintiff's complaint prominently displays the separate charge for the service Plaintiff now claims he cancelled.  Compl. Ex., A at 4.  Thus, the arbitration will turn predominantly on Plaintiff's testimony as to (a) whether he canceled his subscription to Verizon Navigator, and (b) if he did, why he continued voluntarily to pay for the service for over a year before objecting.

Plaintiff's putative expert likely will claim that his time would be required to establish an alleged flaw in Verizon Wireless' billing system that may have caused the charge to appear despite Plaintiff's alleged cancellation.  Plaintiff, however, would ***not*** be required to show such a systematic flaw to recover on his individual claim; all he would have to prove is that he did not authorize the charge in question.  The source of the charge—whether the result of an alleged system flaw, a human error, a misunderstanding, or otherwise—would be irrelevant to Plaintiff's right to recover; if the charge was not authorized, Plaintiff should receive a refund.

### 4.   Plaintiff Has Not Demonstrated Grounds for a Stay Pending Unlikely Congressional Action.

As a last ditch effort, Verizon Wireless expects Plaintiff will ask the Court to stay this action (and Verizon Wireless's Motion) pending Congressional action on the Arbitration Fairness Act of 2011.  Among other things, the Court has no reasonable basis to assume Congress will pass this legislation, which has not even been the subject of Committee hearings, much less passed out of Committee.  Indeed, Congress failed to enact substantially similar legislation introduced in 2009.  *See* Arbitration Fairness Act of 2009, H.R. 1020, 111th Cong.

**E.     The Court Should Stay this Action Pending the Outcome of Arbitration.**

Where any portion of an action brought in federal court is subject to arbitration, the Court "shall" stay the federal action pending the outcome of the arbitration.  9 U.S.C. § 3.  The Court should do so here.

## IV.     CONCLUSION

For the reasons stated above, the Court should enforce the arbitration clause agreed between Plaintiff and Verizon Wireless, compel Plaintiff to commence arbitration of his claims, and stay this action pending the outcome of that arbitration.

Dated:  June 23, 2011.

DAVIS WRIGHT TREMAINE LLP

By:/s/ *Charles S. Wright*
    Martin L. Fineman
    Stephen M. Rummage
    Charles S. Wright

Attorneys for Defendant
CELLCO PARTNERSHIP
d/b/a VERIZON WIRELESS

DAVIS WRIGHT TREMAINE LLP

17

DEFENDANT'S MOTION TO COMPEL ARBITRATION
DWT 17316057v3 0052051-013713